**STATE of Minnesota, Respondent,**

v.

**Joseph MOUSEL, Appellant.**

**No. C7–85–15.**

Court of Appeals of Minnesota.

July 30, 1985.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., Thomas Foley, Ramsey County Atty., St. Paul, for respondent.

C. Paul Jones, State Public Defender, Ann Remington, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Appellant was convicted of aggravated forgery, Minn.Stat. § 609.625, subd. 3 (1982). On appeal he challenges the sufficiency of the evidence. We affirm.

## FACTS

On June 1, 1982, Joseph Mousel was issued a citation for speeding in Dakota County. He pleaded guilty and was fined $44. Due to nonpayment of the fine, Mousel's license was suspended effective February 8, 1983, by the Minnesota Department of Public Safety, under provisions of Minn. Stat. § 171.16, subd. 3 (1982).

On February 28, 1983, the Department of Public Safety received an envelope containing a copy of the suspension notice sent to Mousel, a letter, and a document entitled "order." The letter was from a John Anderson, attorney, Gamble Drive, Minneapolis, Minnesota, and directed the Department of Public Safety to cancel the suspension of Mousel's driver's license; the letter said that the fine had been paid and the charge was being appealed. The "order" said that Mousel had appealed his case, and it purported to refer the case to an appeals panel. At the bottom of the document it showed the mailing of copies to Joseph Mousel and "John Anderson, Esq."

At trial, a Dakota County deputy court clerk described the false characteristics of the order document received by the state agency:

1. The document was headed "COUNTY OF DAKOTA, SECOND JUDICIAL DISTRICT," although Dakota County was in the First Judicial District, not the Second;

2. The document listed the "D.C. File No." as 60 613, a number that referred to an inactive or invalid Dakota County file;

3. The document listed a "County File No." as 102 4328, a number that did not correspond to a Dakota County Court file;

4. The document listed a "Case # " as 3285–13, and # 3285–13 referred to the Dakota County file number for Joseph Mousel's speeding ticket and not a case number;

5. The document stated that, "The above-captioned matter came on before the undersigned on February 11, 1983," although nothing was on the Dakota County Court calendar on February 11, 1983;

6. The document stated that the matter came on the calendar "upon referral by the court administrator" when, in fact, the Dakota County administrator did not refer petitions to Dakota County Court;

7. The document ordered the matter referred to the appeals panel of judges "on which the honorable John Daly is senior judge; " Judge Daly was a judge in Dakota County Court but was not the senior judge; and

8. The document was signed with the initials "G.E.H." for "Gerald E. Hollenkamp, Chief Judge," although Gerald E. Hollenkamp was not a judge in Dakota County Court but was a Dakota County Commissioner.

The Department of Public Safety acted on the letter and "order" and withdrew the suspension of Mousel's driver's license. The pretense was eventually discovered. It was found that there were three John Andersons registered as attorneys with the

Minnesota Supreme Court and they all testified at trial that they did not represent Mousel or write the letter to the Department of Public Safety regarding reinstatement of Mousel's driver's license.

John Samuelson, a criminal investigator for the Minnesota Attorney General's office, met with Joseph Mousel and obtained handwriting samples. These were submitted to the Bureau of Criminal Apprehension. The BCA handwriting expert testified there was a "strong amount of evidence" that Mousel had signed "John Anderson," but she could not state conclusively that he was the writer of the "G.E.H." signature on the "order."

Mousel was charged with four counts of forgery and at the close of the State's case, three counts were dismissed. Mousel was convicted of uttering a forged court order. Imposition of sentence was stayed, and appellant was placed on probation for five years, subject to the conditions that he serve 10 days in jail, provide 100 hours of community service and pay a $40 surcharge.

### ISSUE

Was the evidence sufficient to sustain appellant's conviction?

### ANALYSIS

#### I.

Appellant claims he was not sufficiently identified because only one witness could have recognized him from a contact before trial, and that witness referred to "the defendant" but did not point to him in the courtroom. Appellant appeared during trial as Joseph Mousel, the name associated with the events proven at trial. Appellant did not testify. He contends that his conviction cannot stand without an erroneous conclusion that he had a burden to prove lack of identity.

██ John Samuelson met appellant while investigating the case. He referred to "the defendant" as well as to "Joseph Mousel" when he testified. This is direct identifying evidence. More important, the appellant's argument disregards the sufficiency of circumstantial evidence; according to a standard upheld for a century in Minnesota, a conviction is sustained by circumstantial evidence "inconsistent with any rational hypothesis" except guilt. *Hanson v. State,* 345 N.W.2d 794, 796 (Minn.Ct.App.1984) (citation omitted). It puts no burden of proof on appellant to note that his presence as Joseph Mousel was a factor among those tending to destroy the rationality of any doubt about identification of the offender.

#### II.

Appellant was convicted of uttering a forged writing or object. Minn.Stat. § 609.625, subd. 3. The statute on forgery offenses deals with "a writing or object of any of the following kinds," including a "court order," made "so that it purports to have been made by another." Minn.Stat. § 609.625, subd. 1 (1984).

Appellant contends that the document sent to the licensing agency "was not a court order by any stretch of the imagination." The argument points out the characteristics of this order that were different from those of an actual order.

██ Court orders are one of the "kinds" of writings covered by the forgery statute. The statute deals with documents that pretend to be acts of a court. The extent of authenticity of false documents obviously varies. It is evident from the face of the document in question that it pretends to be a court order. It has not been otherwise characterized, even in appellant's arguments. Appellant's argument is without merit.

### DECISION

The evidence was sufficient to convict appellant of aggravated forgery of a court order.

Affirmed.